FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/06

ALBA SOMOZA,

                     Plaintiff,

             - against -

NEW YORK CITY DEPARTMENT
OF EDUCATION,

                  Defendant.
-------------------------------X

06 Civ. 5025 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Alba Somoza ("Somoza" or "Plaintiff")) seeks a temporary restraining order ("TRO") prohibiting the New York City Department of Education ("DOE") from "taking any action to rescind, terminate or remove funding for plaintiff Alba Somoza's current educational, vocational, and related services programs (collectively, the "Blau Program") pending a hearing on Plaintiff's request for a preliminary injunction." (Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, filed June 29, 2006 ("Order to Show Cause"), at 1.) Funding for the Blau Program is due to expire on June 30, 2006. In the underlying complaint, filed concurrently with the Order to Show Cause, Somoza, who is severely disabled and suffers from cerebral palsy, alleges she was denied a free

1

appropriate public education (a "FAPE") as she is entitled to under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 et seq. (the "IDEA").

The underlying complaint requests that the Court issue declaratory and injunctive relief arising out of the DOE's alleged violation of Somoza's statutory rights under the IDEA and under Article 89 of the New York State Education Law. By Order to Show Cause, Somoza seeks a preliminary injunction to require the DOE to maintain funding for the Blau Program until all proceedings regarding this matter have been resolved. (Order to Show Cause at 2.) On June 29, 2006, the Court heard oral argument (the "Oral Argument") on Somoza's request for a temporary injunction pending further briefing and a preliminary injunction hearing. Because of the time constraints, DOE was unable to respond in writing to the papers Somoza filed with the Order to Show Cause. The Court reserved judgment at that time. On June 30, 2006, the Court issued an Order granting Somoza's request for a TRO and indicated that it would elaborate on the findings and reasons for its ruling in a subsequent Order. In this Decision and Order, the Court sets forth the reasoning underlying its decision to grant Somoza's request for a TRO.

## I. **BACKGROUND**

A. FACTS[1]

Somoza has cerebral palsy and quadriplegia and is non-ambulatory. She is unable to speak or to use her hands, and thus requires assistance with life function activities such as eating and dressing. She also uses assistive technology in order to communicate. Although Somoza has been tested as having an I.Q. of 132, her disabilities have prevented her from acquiring the skills that would normally be expected of someone with an above-average I.Q. Indeed, while Somoza attended New York City public schools and graduated from the School of the Future in 2002, it is her contention that she did not gain the necessary skills to graduate from high school during that time, and that she was able to read and write at only a fourth grade level at the time of her graduation. While she was granted a New York State Regents diploma, she now contends that this diploma was a sham.

---

[1] The factual summary presented herein derives primarily from the following documents: Verified Complaint of Alba Somoza, dated June 29, 2006 ("Compl."); Memorandum of Law in Support of Order to Show Cause for Temporary Restraining Order and Preliminary Injunction, dated June 29, 2006 ("Pl. Mem."); Affidavit of Salem M. Katsh, dated June 29, 2006 ("Katsh Aff."), with accompanying Exhibits; Affidavit of Mary Somoza, dated June 8, 2006 ("M. Somoza Aff."), with accompanying Exhibits; Affidavit of Andrea F. Blau, Ph.D. ("Blau"), dated June 8, 2006 ("Blau Aff."), with accompanying Exhibits. Except where specifically referenced, no further citation to these sources will be made.

3

Following high school graduation, Somoza began a vocational and educational program at Queens Occupational Training Center, which is run by DOE. The program was a failure for Somoza, who was not given the necessary support or opportunity to learn in this setting. Mary Somoza, Somoza's mother ("Mary Somoza"), met with the head of the DOE District overseeing the program, Susan Erber, who agreed that it was not appropriate for Somoza. As a result of this and subsequent meetings, DOE ultimately agreed to fund and support a special program to teach Somoza. This program was designed and implemented by Blau, a leader in this area of education, and was funded by DOE at a cost of approximately $400,000 per year.[2] DOE's contract with Blau for the program began in the 2002-2003 school year and was renewed for the 2003-2004, 2004-2005, and 2005-2006 school years. Somoza points out that she has made significant progress with the assistance of the program. She contends that by agreeing to provide funding for the Blau Program for Somoza since 2002, DOE effectively has acknowledged that this program is necessary to remedy DOE's failure to provide Somoza with a FAPE during grades 1-12, which she is entitled to under the IDEA.

---

[2] It is the continuation of the Blau Program that is at issue in this litigation.

4

The renewal of the Blau Program contract for the 2005-2006 school year occurred after DOE initially indicated that it would terminate the program in June of 2005, as Somoza would be turning 21 in December of 2005. Somoza's mother spoke with DOE and sought an extension for the program for another year on the basis that Somoza should not be penalized for having birthday in December, whereas if she were born in January the program would continue for another year. Somoza's mother asserts that she was aware that DOE had made similar exceptions in the past. DOE agreed to extend the Blau Program for another year.

DOE subsequently forwarded to Somoza's mother, who was unrepresented by counsel at the time, a stipulation setting forth the agreement to continue the Blau Program and its various components. The Stipulation also included a release provision, which Somoza's mother signed, indicating that she released DOE from any and all claims including any claim that Somoza did not receive a FAPE.[3] The parties dispute whether the Stipulation is valid and whether Somoza's mother can legally waive her daughter's right to a FAPE.

---

[3] The Stipulation refers to the discharge of "any and all claims alleged," and any claims "alleged in the complaint," though neither Somoza or her mother had initiated any legal proceedings against DOE at the time the Stipulation was signed. ("Stipulation of Settlement and Discontinuance," In the Matter of Alba Somoza, dated January 20, 2005, attached as Exhibit C to the Katsh Aff. (the "Stipulation").)

5

In early 2006, DOE indicated that it did not intend to renew Blau's contract to continue Somoza's education program. On March 29, 2006, Mary Somoza requested an Impartial Hearing seeking relief from the threatened termination of the Blau Program.[4] On June 26, 2006, the Impartial Hearing Officer (the "IHO") issued a written decision dismissing Somoza's Amended Complaint on the grounds that the Stipulation as signed by Mary Somoza was valid and enforceable. (See "Findings fo Fact and Decision," Case Number 104373, dated June 26, 2006, attached as Exhibit B to Katsh Aff.) Somoza contends that the IHO improperly refused to hear any evidence beyond the issue of the validity of the Stipulation on the second day of the hearing. Somoza did not pursue any DOE administrative appeal of the IHO's determination.

Somoza asserts that if a TRO is not granted, she will suffer irreparable harm by reason of the imminent disbandment of the Blau Program staff that provides her education. Blau has indicated that she expects Somoza will experience a serious and immediate regression in her

---

[4] In New York, parents may request an impartial due process hearing before an IHO pursuant to Article 89 of the New York Education Law, N.Y. Educ. L. §§ 4401-4410-b, which provides that upon notice by a parent of a dispute, a local board of education must appoint an independent hearing officer (IHO) to hear the claim.

abilities and skills if the program is not continued at this point.  Somoza argues that without the continuation of the Blau Program, through which her education has progressed as it never had before, she will lose her opportunity to be a meaningful member of society.  Blau believes that Somoza requires another two years of "intensive education and work to allow her to develop enough independent communication skills to allow her to transition into a vocational environment that will allow her to participate meaningfully in society as an adult."  (Blau Aff. ¶ 22.)

At the Oral Argument, DOE contended that under the requirements set forth in §1415(i)(2) of the IDEA, this Court lacks jurisdiction to issue a TRO.  DOE also contested Somoza's application for relief on substantive grounds.

## II. **DISCUSSION**

### A. STANDARD OF REVIEW

It is well established that in this Circuit, the standard for an entry of a TRO is the same as for a preliminary injunction.  See, e.g., Echo Design Group, Inc. v. Zino Davidoff S.A., 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003); Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd., 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002) ("The

7

standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical."). Generally, to obtain a preliminary injunction, a party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor.'" MyWebGrocer, L.L.C. v. Hometown Info., Inc., 375 F.3d 190, 192 (2d Cir. 2004) (quoting Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002)).

Somoza argues for application of the "fair grounds for litigation" standard. In a footnote, Somoza's brief states that DOE argued before the IHO that Somoza's application for a preliminary injunction should be subject to the higher standard of likelihood of success on the merits, rather than the "fair grounds for litigation" standard because the plaintiff here is challenging a government action taken in the public interest pursuant to a statutory scheme. See, e.g., Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349 (2d Cir. 2003) (noting that higher likelihood of

8

success standard is applicable where requested preliminary injunction would stay government action taken in the public interest pursuant to a statutory or regulatory scheme).

The Court agrees with Somaza that this more stringent showing is not required in this case. This standard is typically applied where a party seeks to enjoin the enforcement of a statute or regulation that would otherwise be applicable to the complaining party. This higher standard of proof "requires judicial deference to those regulations developed through reasoned democratic processes." Id., at 349. In the instant case, Somoza is not seeking to enjoin the application of the IDEA to her. Indeed, Somoza's complaint alleges that she is seeking equitable relief that she is entitled to pursuant the IDEA, and as such she is not attempting to call into question a statutory scheme "developed through reasoned democratic process." In the same vein, the Court is not persuaded that DOE's actions here can unequivocally be characterized as "government action taken in the public interest." Id. It is at least arguable that in the instant dispute the public interest is more properly served by a determination that Somoza continue to receive the benefits of the Blau Program and continue to progress with her education. See Cosgrove

9

v. Bd. of Educ. of the Niskayuna Central Sch. Dist., 175 F.
Supp.2d 375, 392 (D.Conn. 1995) (finding that less stringent
preliminary injunction standard applied because the denial
of plaintiff's compensatory education pending the review of
the claim would not further a legitimate state interest or
public policy.) For these reasons, the Court will apply the
less stringent "fair ground for litigation" standard in
examining the TRO application.

The Court has also considered whether Somoza's request
for injunctive relief should be analyzed under the even more
stringent standard that applies when a party seeks a
mandatory rather than a prohibitory injunction. The Second
Circuit has held that "where an injunction is mandatory -
that is, where its terms would alter, rather than preserve,
the status quo by commanding some positive act - the moving
party must meet a higher standard than in the ordinary case
by showing 'clearly' that he or she is entitled to relief or
that 'extreme or very serious damage' will result from a
denial of the injunction." Phillip v. Fairfield Univ., 118
F.3d 131, 133 (2d Cir. 1997) (quoting Tom Doherty Assocs.,
Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir.
1995)).

The Second Circuit has also recognized that the distinction between mandatory and prohibitory injunctions is "not without ambiguities." Tom Doherty, 60 F.3d at 34. The instant case presents an example of a borderline question in which the injunction is susceptible to characterization as both a prohibitory and a mandatory injunction. On the one hand, the TRO that is sought is phrased in prohibitory terms, restraining DOE from discontinuing funding for a program that has been in effect for several years. It is Somoza's contention that DOE has an obligation to continue the program in order to provide her with the FAPE that she has yet to receive from DOE. However, from DOE's point of view, the most recent contract has expired and the terms of the Stipulation free DOE from any obligation to continue funding. From this perspective, then, the TRO would mandate that DOE take the affirmative step of continuing to fund a program for which the contract has expired and that the IHO deemed to be concluded under the terms of the Stipulation.

Nonetheless, the Court is not inclined to view this as a mandatory injunction based on the information currently before it. First, the Stipulation is sharply contested and substantial arguments have been made raising doubt as to whether it may be valid. Second, contract in question is

11

between DOE and Blau, not between DOE and Somoza. Accepting for a moment Somoza's contention that she is entitled to a FAPE from DOE, then DOE's refusal (through its failure to renew its contract with Blau, a third party in this case) to continue to provide the educational services it may be obligated to provide should not permit it to convert a prohibitory injunction into a mandatory one. Framing the inquiry this way serves to highlight the ambiguity of this situation.

In the final analysis, it is the Court's view that the requested TRO will maintain the status quo by continuing the education that Somoza has been receiving for years, and thus the Court will not adopt the higher standard of review applicable to mandatory injunctions. But see Cosgrove, 175 F. Supp. at 392 n.20 (noting that in a "hypothetical scenario where the parents lost the compensatory education hearing before the IHO and were seeing a preliminary injunction imposing such education during the appeal process," a mandatory injunction test would clearly be required.)[5]

---

[5] The Court notes that even if it were to apply the more stringent mandatory injunction test, Somoza would still be entitled to a TRO at this point, as she has made a showing, discussed in greater detail in Section II.B.1., infra, that the denial of the TRO will result in "extreme or very serious damage." Phillip, 118 F.3d at 133.

12

## B. APPLICATION

In the instant case, the Court is persuaded that Somoza has demonstrated that she will suffer irreparable harm if the TRO does not issue, and further that she has raised sufficiently serious questions going to the merits of her claim and that the balance of hardships tips decidedly in her favor.

### 1. Irreparable Harm

"The single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983) (citations omitted); see also Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (the threat of irreparable harm is the sine qua non for the granting of injunctive relief). Based on the submissions made by Somoza, the Court is persuaded that she will suffer irreparable harm if DOE is permitted to terminate the Blau Program at this point. Somoza has presented evidence that without the continuation of the Blau Program, she will begin the lose the skills she has acquired through this highly specialized educational service. (Blau

13

Aff. ¶ 5.)  In her affidavit, submitted in support of
Somoza's application, Blau indicates that the termination of
the program at this point will cause Somoza to "rapidly and
dramatically" regress in a number of critical areas.  (Blau
Aff. ¶ 5.)  Blau further indicates that Somoza needs to
continue to improve and use her skills on a daily basis in
order to avoid the deterioration of Somoza's ability or
desire to communicate. (Id. ¶ 28.)  Her affidavit further
states that the termination of the Program at this point
will result in substantial and irreparable effects on Somoza
and her potential for future achievement.   (Id. ¶ 27.)
Furthermore, the Court credits evidence that because the
Blau Program was so uniquely tailored to Somoza's needs,
there is no comparable program available to Somoza through
which she could readily attempt to continue with her
education.   (M. Somoza Aff. ¶ 28.)   Terminating Blau's
contract at this time may compel Blau and members of her
team to enter into other commitments that may render them
unavailable to continue their services to Somoza in the
event Somoza ultimately prevailed on the merits.

### 2. Sufficiently Serious Questions and Balance of Hardships

14

As the Court determined above, to support entry of a TRO on her behalf, Somoza must demonstrate not only irreparable harm in the absence of the TRO, but also sufficiently serious questions going to the merits as to make her claim fair grounds for litigation, and that the balance of hardships tips decidedly in her favor. See Echo Design Group, Inc., 283 F. Supp. 2d at 965. Here, the Court is persuaded that Somoza's submissions, in combination with the arguments presented to the Court at the Oral Argument, are adequate to demonstrate that Somoza has satisfied this standard.

As discussed above, Somoza argued that if the funding for the Blau Program were to be discontinued as of June 30, 2006 the staff that implement the program would be forced to disband and possibly take other positions pending the outcome of this litigation. In that sense, it is not possible to start and stop the Blau Program with ease. At the same time, Blau's affidavit presents her belief that, without the continuous practice and training that the Blau Program provides, Somoza will immediately begin a decline and regression in the skills she has acquired to date. Somoza has also argued that her development in the Blau Program has been remarkable and unique in her educational

15

experiences, presenting her first real promise of achieving the ability to communicate independently and become a meaningful member of society. In these circumstances, the hardship presented by discontinuation of the program is starkly apparent.

In turn, DOE would face the prospect of continuing to pay for a program that it contends it is no longer obligated to provide. There is no doubt that the costs of providing the Blau Program to Somoza are substantial. Nonetheless, as Somoza pointed out at the Oral Argument, the cost of maintaining the services during the pendency of the TRO and potentially until a preliminary injunction hearing can be held, will require DOE to fund the Blau Program for a number of weeks at most. In relative terms, at a cost of approximately $400,000 per year, funding the Blau Program for a few additional weeks should not be prohibitive. While whatever the amount may be should not be minimized, given that DOE has already invested approximately $1.2 million into providing for Somoza's education over the last three years, continuation of the program the extra few weeks pending the outcome of a preliminary injunction hearing is not a hardship that outweighs the harm faced by Somoza should funding for the program cease immediately. Rather,

16

Somoza has demonstrated that the balance of hardships tip decidedly in her favor.

Secondly, the Court finds that Somoza has raised sufficiently serious questions as to the merits of her claim to warrant the granting of the TRO. At the Oral Argument, DOE's primary contention was that the Court did not have jurisdiction over this matter because Somoza had not met the jurisdictional requirements set forth in § 1415(i) of the IDEA. That provision outlines the rights of a party aggrieved by state court proceedings to bring a civil action. It provides that if the impartial hearing is appealed to the state educational agency (as is provided for in § 1415(g)), that decision is final except that any party may bring a civil action following the appeal. It further provides that a party who does not have the right to appeal an administrative proceeding under subsection (g) shall have a right to bring a civil action. See 20 U.S.C. § 1415. Exhaustion of these administrative remedies is generally required before a parent may seek judicial remedies under the IDEA. See Honig v. Doe, 484 U.S. 305, 327 (1988). However, this requirement does not apply if the administrative process would be futile or inadequate. See id.; see also Cosgrove, 175 F. Supp. 2d at 391.

17

At the Oral Argument, DOE contended that because Somoza had not appealed the final decision of the IHO, she had not exhausted her administrative remedies, as is required under the IDEA, and thus that there was no basis for this Court's jurisdiction. Somoza countered that there was no requirement that the IHO decision be appealed in this case because Somoza was not seeking pendency in this case.[6] In her Complaint, Somoza also asserts that the Impartial Hearing that took place "was improperly limited in scope and a nullity." (Compl. ¶ 48.) Somoza also argued that she could bring a federal court action seeking equitable relief under the IDEA, contending that the complaint presented claims that could not be barred from federal court when exigencies required that equitable relief be granted immediately. The IHO's decision was issued on June 26, 2006, leaving Somoza with only three days during which to

---

[6] Somoza's Memorandum of Law in Support of Order to Show Cause for Temporary Restraining Order and Preliminary Injunction, dated June 29, 2006 ("Pl. Mem.") states that Somoza, on the basis of the decision in Cosgrove, among other cases, is "not seeking automatic stay put pendency under the IDEA and New York regulations, but rather invokes the equitable remedy of emergency relief." (Pl. Mem. at 8 n.6.) Cosgrove held that the IDEA's statutory obligation of pendency (which provides that students should stay in their current education setting pending the outcome of litigation) did not apply to a child over the age of 21 who was seeking the equitable remedy of compensatory education. Compensatory education refers to a requirement that a school district provide education past a child's twenty first birthday in order to make up for earlier deprivations in that child's education, and it may be appropriate where there has been a "gross violation" of the IDEA. See Cosgrove, 175 F. Supp. 2d 375, 387.

18

pursue an administrative appeal before the Blau Program was set to expire on June 30, 2006.

On this jurisdictional question, the Court finds that the parties' dispute presents sufficiently serious issues, making Somoza's claim fair ground for further litigation. At this preliminary stage in the litigation, given exigencies demanding an immediate resolution, the Court does not deem it necessary to further evaluate the merits of these issues to warrant issuance of a TRO. The Court notes that Somoza's papers did not include any argument as to jurisdiction. As DOE has not yet had the opportunity to submit written papers opposing Somoza's application, there has been no briefing at this point on the jurisdictional question from either party. This issue raises sufficient complexities that affect a resolution on the merits to warrant briefing prior to further analysis by this Court.

The other issues presented by Somoza's request, including the question of the validity of the Stipulation -- specifically whether Mary Somoza had sufficient authority to act on Somoza's behalf in signing the Stipulation, or whether in fact Somoza's educational rights under the IDEA are not waivible -- as well as Somoza's claim that she is entitled to further compensatory education, also raise

19

sufficiently serious issues going to the merits to make Somoza's claim fair ground for further litigation. In light of these serious questions concerning the merits of the parties' dispute, and because Somoza has demonstrated both that the balance of hardships tip decidedly in her favor and that she will suffer irreparable harm without he issuance of the TRO in this case, the Court finds that an entry of a TRO is warranted.

### III.  ORDER

For the reasons described above, it is hereby

**ORDERED** that the Order dated June 30, 2006 expressing the Court's initial ruling granting the request of plaintiff Alba Somoza ("Somoza") for a Temporary Restraining Order is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that defendant, New York City Department of Education shall submit its response to Somoza's application for a preliminary injunction by July 11, 2006, and that Somoza shall submit her reply by July 14, 2006; and it is finally

**ORDERED** that hearing on Somoza's request shall be held before the Honorable Richard Holwell on July 18 at 1:00 p.m. in this Court at 500 Pearl Street, Courtroom 17B.

**SO ORDERED.**

Dated:     New York, New York
           10 July 2006

                                    Victor Marrero
                                       U.S.D.J.